UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRANT LEONARD,

       Plaintiff,                                            No. 22-10280

v.                                                      Honorable Nancy G. Edmunds

LAPEER COUNTY, et al

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGEMENT [28]**

      This action arises from the August 16, 2020 detention and arrest of Plaintiff Grant Leonard. On the morning of the arrest, Defendant Deputy Daniel Hinsberger of the Lapeer County Sheriff's Department observed a black Dodge Charger with police vehicle rims. Aware of a police impersonation incident reported in Metamora Township a few days prior, Defendant Hinsberger followed the vehicle. When dispatch announced a "black unmarked car" reported in his area on the radio minutes later, Defendant Hinsberger initiated and radioed in a traffic stop. Plaintiff, the driver of the black Charger, consented to a search of his vehicle. During the search, Deputy Hinsberger located, among other things, a semiautomatic rifle, loaded magazines, body armor, handcuffs, and what he believed to be a double-edged nonfolding knife in the passenger compartment. Believing that carrying the knife in the vehicle was a violation of Michigan's concealed weapon law, Deputy Hinsberger arrested Plaintiff and transported him to the Lapeer County Jail. Defendant Hinsberger seized several items

1

from Plaintiff's vehicle and he was held overnight. Lapeer County Prosecutors decided to release Plaintiff but retained some of his property for further investigation into remaining possible charges. Plaintiff forfeited the knife. All other items were returned, Metamora dropped him as a police impersonator suspect, and the County suspended all charges.

Plaintiff Leonard brings this action against Defendant Hinsberger, Defendant Parks, and Defendant Lapeer County Sheriff's Department, alleging constitutional claims under 42 U.S.C. § 1983 for false arrest or imprisonment, unlawful seizure and/or "unlawful holding of property," and a municipal liability claim for a custom, practice, or policy resulting in constitutional violations. (ECF Nos. 1, 30.) Defendants moved for summary judgement under Fed. R. Civ. Pro. 56(a) and asserted qualified immunity defenses against the claims. (ECF No. 28.) Plaintiff timely responded, and Defendants filed a corrected reply. (ECF Nos. 30, 33.) For the reasons below, the Court GRANTS Defendants' Motion for Summary Judgment on all counts.

I.     Background

Defendants Daniel Hinsberger and Jason Parks are sheriff's deputies with the Lapeer County Sheriff's Department. According to Defendant Hinsberger's testimony and the case report he filed on the day of the arrest, he began following Plaintiff's vehicle because of a roll call report a few days prior describing a police impersonator in Metamora, a township of Lapeer County, driving a black Dodge Charger. (ECF Nos. 28-2, PageID.174, 28-5, PageID.246.) Plaintiff's vehicle appeared to be a former police vehicle. Defendant Hinsberger observed Plaintiff on M24 and began following him as he exited onto Pratt Road. Shortly after he began his pursuit, Defendant Hinsberger

received a call from dispatch alerting him to "a report of that possible black unmarked car driving back and forth on 24 between Pratt and Dryden." (ECF No. 33-5, PageID.700.) The 911 call that prompted the dispatch included information about a push bar and lights on the vehicle, but this information was not relayed to Defendant Hinsberger in the dispatch call. *Id.* Hinsberger responded that he had a black Charger going westbound on Pratt, relayed the license plate information, and notified dispatch that he would make a stop. *Id.* A CAD transmission came across at 8:18 am saying that a 911 call reported a black Charger with a light bar, push bar, and a small sticker on the passenger side window at that location. Throughout the record, it is undisputed that the stop occurred at approximately 8:20 am. Defendant Hinsberger testified that he could not recall if he saw the CAD transmission prior to the stop. Hinsberger noted in his deposition that Plaintiff's vehicle "had the rims consistent with the center caps that are like our patrol vehicles here and every other patrol vehicle that we see. They weren't custom rims." (ECF No. 28-2, PageID.175.) It is undisputed that Plaintiff's vehicle was formerly a police vehicle. Hinsberger stated that this was the only car in the area that matched the description at the time of the dispatch call. *Id.*

As for Plaintiff's physical appearance compared to the police impersonator suspect, the Metamora police report described the impersonator as 6'0, 240, and clean shaven, with short dark hair. (ECF No. 28-12, PageID.305.) Plaintiff described himself as 5'11, 290 at the time of his arrest. (ECF No. 28-3, PageID.204.) In the Police report Defendant Hinsberger filed that day, he described Plaintiff as 5'11 and 220. The police impersonator was reported as wearing a black long-sleeved shirt with tan tactical pants. *Id.* Plaintiff was a Cadet with the Oakland County Sheriff's Department Cadet Program

and told Defendant Hinsberger that he wears tan tactical pants and a black shirt when working in that role.

Throughout the record, it is undisputed that other police officers from Matamora Township and from the Michigan State Police arrived after the stop to assist. Trooper Anthony Easlick of the Michigan State Police, who was on scene for the stop and search, also observed Plaintiff's vehicle prior to the dispatch call. He testified that if Defendant Hinsberger had not stopped Plaintiff, he would have. (ECF No. 28-4, PageID.237.)

Once stopped, Hinsberger observed wires where sirens and radios had been removed in the center console of the vehicle. (ECF No. 28-2, PageID.176.) The back windows were also tinted. Plaintiff rolled the windows down when asked, and when Defendant Hinsberger observed a training gun and handcuffs in the backseat, he asked Plaintiff to step out of the vehicle. (ECF No. 28-2, PageIDs.176-177.) It is undisputed that Hinsberger asked for consent to search the vehicle and Plaintiff granted it.

In the search, officers discovered and seized a semiautomatic rifle, magazines with live ammunition, a KA-Bar knife, bulletproof vest, a car video recorder, and Plaintiff's Apple iPhone. The record shows that the KA-Bar knife is a TDI (Tactical Defense Institute) model made of synthetic plastic. A description of the knife readily available online describes this knife as a "Fixed Blade" "Spear Point Double-Edge Dagger." *See e.g.*, Oso Grand Knives, under Self Defense Products, https://perma.cc/U2C2-KXK7. It is described as a fully concealable self-defense tool. *Id.* Michigan law prohibits the carrying of "a dagger, dirk, stiletto, a double-edged nonfolding stabbing instrument of any length … in any vehicle operated or occupied by

4

the person." Mich. Comp. Laws § 750.227. A violation is a felony. *Id.* Additionally, officials on the scene testified that they believed that in connection with another crime, the possession of body armor could be an additional charge. (ECF No. 28-4, PageID.236.)

These items were taken to the Lapeer County Sheriff's Office, where Plaintiff was held. Plaintiff's vehicle was transported to the Metamora Township Police Department for investigation in connection with the previous police impersonation incident. (ECF No. 28-5, PageID.247.) In their investigation of that incident, Metamora Township also obtained and executed a search warrant of Plaintiffs home on August 17, 2020. (ECF No. 28-5, PageID.250.) Metamora officials subsequently eliminated Plaintiff as a suspect. *Id.* Lapeer County officials suspended Plaintiff's warrant for arrest and Plaintiff was released on August 17, 2020. He retrieved his vehicle the same day. Plaintiff's phone was returned to him on August 18, 2020. The remaining property remained in evidence for further investigation of the concealed weapon charges at the direction of the Prosecuting Attorney and with Plaintiff's consent. (ECF No. 28-5, PageID.256.) The bulletproof vest, which Plaintiff possessed on loan from the Oakland County Sheriff's Office for cadet training, was returned to Oakland County on August 19, 2020. (ECF No. 28-5, PageID.257.) The rifle, two loaded magazines, and the dashboard camera were returned on September 25, 2020. (ECF No. 28-5, PageID.259.) Plaintiff agreed to forfeit the knife as contraband.

Defendant Parks returned Plaintiff's phone to him on August 18, 2020 at the Lapeer County Sheriff's Office. It is undisputed that he was not present at the initial

5

traffic stop and played no part in the any decisions made regarding searching Plaintiff or seizing any of his property on August 16, 2020.

Defendants move for summary judgment and argue they are entitled to qualified immunity as to Plaintiff's Fourth Amendment claims. They argue that Plaintiff's *Monell* claim fails because there is no evidence of a constitutional violation and because Plaintiff failed to establish municipal liability.

## II.     Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

### III. Analysis

Plaintiff alleges three separate causes of action in his complaint:

1. Defendant Hinsberger falsely arrested and falsely imprisoned him, violating his Fourth Amendment rights.
2. Defendants Hinsberger and Parks unlawfully seized his property and held it for an unreasonable amount of time, violating his Fourth Amendment rights.
3. Defendant Lapeer County displayed reckless and deliberate indifference in the failure to train, supervise, and discipline deputies, violating his Fourth Amendment rights under *Monell*.

### A. False Arrest and False Imprisonment

Plaintiff alleges that Defendant Hinsberger detained him without reasonable suspicion and arrested him without probable cause in violation of the Fourth Amendment.

#### 1. Reasonable Suspicion for Stop

The Fourth Amendment requires that all "searches and seizures" be based upon probable cause. U.S. Const. amend. IV; *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). Where a law enforcement officer lacks probable cause but possesses a reasonable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir.2000). To justify such an intrusion under *Terry*, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Courts must look to the totality of the circumstances in

determining whether suspicion is reasonable. *United States v. Sheckles*, 996 F.3d 330, 343 (6th Cir. 2021); *United States v. Davis*, 430 F.3d 345, 354 (6th Cir.2005). If the basis for the *Terry* stop was proper, courts must then "determine 'whether the degree of intrusion ... was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Davis*, 430 F.3d at 354.

The degree of suspicion required for a *Terry* stop, especially when compared to other standards, is quite low: it must only raise "a moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009). Reasonable suspicion "is obviously less demanding than ... probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Probable cause itself "is not a high bar" and one that requires only a "substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (citations omitted). Still, reasonable suspicion mandates more than "a mere hunch or intuition." *Jones v. City of Elyria*, 947 F.3d 905, 913 (6th Cir. 2020). It requires more than a "gut feeling." *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (citation omitted).

An examination of the totality of the circumstances includes the officer's own observations as well as information the officer receives from police reports, dispatch, and fellow officers. *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008). The totality of the circumstances also involves "commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). It also involves inferences the officer may draw based on his "experience and specialized training," *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

Defendant Hinsberger pulled over a black Dodge Charger, the same color and model of the suspect vehicle he knew from a report made days prior. While the Charger did not have a light bar and push bar, it did have rims only found on law enforcement vehicles and tinted rear windows. The dispatch call Hinsberger received prior to the stop did not mention the push bar and light bar, but it did describe the exact location of the suspect's vehicle. Plaintiff's vehicle was the only black Charger in that area at that time. The initial report described the suspect as being almost the same height and weight as Plaintiff and clean shaven with short dark hair.

These are specific and articulable facts which Defendant Hinsberger knew prior to initiating the stop. Compared to similar cases in the Sixth Circuit, these facts are sufficient to create reasonable suspicion. *See, e.g.*, *Hurst*, 228 F.3d at 757 (finding reasonable suspicion to stop a car that roughly matched color and style of the suspect vehicle, even when the vehicle was a different make and model, and when carrying an additional passenger compared to the reported vehicle, because the vehicles were sufficiently similar and the location was consistent with the time needed to travel to that point from the suspect's last reported location.) The many similarities in this case outweigh minor differences. For a comparison, see *United States v. Jackson*, 188 F. App'x 403, 407–12 (6th Cir. 2006), finding no reasonable suspicion to stop a vehicle that was a different make, different model, and different color than the suspect vehicle, travelling in the opposite direction of the suspect vehicle, and where the driver was not bald when the reported driver was.

In addition to these common specific facts, the circumstances also support reasonable suspicion. Defendant Hinsberger could readily see further evidence that

9

Plaintiff's car was a former police vehicle when he observed the wires in the console. When other law enforcement officers arrived on the scene based on the same dispatch call and prior information, he could infer that their specialized training and experience supported his assessment of the situation. Even considering the facts in a light most favorable to the Plaintiff, all these factors together create a reasonable suspicion of criminal activity justifying the stop of his vehicle. For these reasons, the Court finds Defendant Hinsberger had reasonable suspicion to make the stop.

The initial stop was proper, and Defendant Hinsberger's search of the vehicle was proper because Plaintiff concedes that he gave Hinsberger voluntary consent to search to search his car. "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Accordingly, the search of the vehicle was proper as a matter of law.

### 2. Probable Cause for Arrest

"To prevail on a false arrest claim brought under 42 U.S.C. § 1983, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sampson v. Vill. of Mackinaw City*, 685 F. App'x 407, 412 (6th Cir. 2017) (internal citations omitted). An officer has probable cause if there is an "objectively reasonable basis for the belief that" the individual to be arrested either has committed a crime or intends to commit a crime. *Mobley v. City of Detroit*, 938 F. Supp. 2d 669, 679 (E.D. Mich. 2012) (citing *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005)). If the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution," to suspect that the person "has

committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Furthermore, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. In a § 1983 action, the existence of probable cause is a question of fact a "unless there is only one reasonable determination possible." *Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)).

In the lawful search of Plaintiff's vehicle, law enforcement on the scene discovered the KA-Bar knife in the passenger compartment. Under Michigan's concealed carry weapon law, if the instrument at issue is a "dagger, dirk, stiletto, or double-edged, nonfolding stabbing instrument" it is a dangerous weapon *per se* for purposes of MCL 750.227(1). *People v. Harrison*, No. 324355, 2015 WL 7356587, at *3 (Mich. Ct. App. Nov. 19, 2015). Plaintiff attempts to distinguish the instrument found in his possession because the edges were not sharp, but the Court need not determine whether the knife violated Michigan law. To establish probable cause, the characteristics of the knife must only warrant a prudent person to suspect that that carrying it is a crime.

### 3. Qualified Immunity

Even if Plaintiff was arrested without probable cause, Defendant Hinsberger may be entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). The doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

11

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The existence of qualified immunity turns on the question of whether a defendant's action violated clearly established law. *Id.* at 243-44. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id*. at 244 (quoting Wilson v. Layne, 526 U.S. 603, 614, (1999)). "The Fourth Amendment conditions warrants on probable cause and prohibits unreasonable seizures. A police officer violates those restrictions only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 771-72 (6th Cir. 2014).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Upon discovering the knife inside Plaintiff's vehicle, Defendant Hinsberger could have reasonably believed that he had probable cause to arrest Plaintiff. *See United States v. Hensley*, 469 U.S. 221, 235−236 (1985). Whether that claim is ultimately proved true is irrelevant to the question of what Hinsberger reasonably believed at the time of the arrest. Because Hinsberger acted reasonably in believing that there was

12

probable cause to arrest Plaintiff, he is entitled to qualified immunity on the § 1983 false arrest claim.

### B. Unlawful Seizure and Unlawful Holding of Property

Plaintiff makes another claim against Defendant Hinsberger for the unlawful seizure of his property under the Fourth Amendment and an additional claim against Defendant Parks for unlawfully holding his property at the Lapeer County Sheriff's Department for an unreasonable period of time.

#### 1. Defendant Hinsberger

Generally, a search conducted without a warrant issued upon probable cause violates the Fourth Amendment. *Schneckloth*, 412 U.S. at 219. But it is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.* A search based upon consent may be undertaken without warrant or probable cause, and any evidence discovered during the search may be seized and admitted at trial. *United States v. Richardson*, 949 F.2d 851, 858 (6th Cir. 1991) citing *Schneckloth*, 412 U.S. at 243. Plaintiff does not dispute that he consented to Defendant's search of his vehicle. Any seizure of property that followed was proper as a matter of law.

#### 2. Defendant Parks

Plaintiff alleges Defendant Parks violated his constitutional rights because he believes he could have returned his property to him sooner than he did. The Fourth Amendment does not protect against the "unlawful holding of property." It is undisputed that Parks was not present at the traffic stop and played no part in any decisions about whether to detain or arrest Plaintiff or any decisions relating to the seizure of his

13

property. "Once that act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999) A claim for an illegal refusal to return seized property could be a procedural due process claim brought under the Fourteenth Amendment, but here, all property Plaintiff did not forfeit has been returned.

Plaintiff's claim also does not articulate how anything Defendant Parks did amounts to a seizure. "Damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did that violated the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). The Sixth Circuit has consistently held that such claims "cannot be founded upon conclusory, vague or general allegations." *Terrance*, 286 F.3d at 842.

Qualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions unless their actions violate clearly established rights. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Even if the Court were to accept that the facts and circumstances establish that the seizure of Plaintiff's property was unlawful, they nonetheless establish that Defendant Parks' belief otherwise was not unreasonable under clearly established law, therefore Defendant Parks is entitled to qualified immunity.

### C. Municipal Liability

Defendant also moves for summary judgment on Plaintiff's *Monell* claim. In *Monell*, the Supreme Court held that municipalities are "persons" subject to suit under

42 U.S.C.A. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 700−01 (2018). Such a claim may only be brought when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted). "A municipality may not be held liable under § 1983 on a respondeat superior theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, a plaintiff must show that through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.

The "law is well settled that 'a municipality ... cannot be liable under § 1983 absent an underlying constitutional violation by its officers.' *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986))." (Defs.' Br. at 21). If no claims of a constitutional violation committed by an individual deputy proceed to trial, then the County cannot be held liable.

Plaintiff argues that it has established a *Monell* claim under a theory that Defendant Lapeer County failed to supervise its deputies under a policy of not providing sufficient training on reasonable suspicion and knife law. To state a claim under a *Monell* "failure to train or supervise" theory a plaintiff must show that the need for

15

additional supervision or training "is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, (1989).

The Court has already concluded that Defendants Hinsberger and Parks did not violate Plaintiff's constitutional rights, so the County cannot be held liable. Even if there were violations, however, Plaintiff has not met his burden. Plaintiff points to no evidence in support of his claim other than Defendants' depositions which only show they received no recent training specifically on these topics. Plaintiff has presented no evidence that the lack of training was a deliberately chosen custom or an official departmental policy, or that Defendant Lapeer County was deliberately indifferent to his constitutional rights. Because Plaintiff has provided no evidence in support of his *Monell* claim, summary judgment will be granted in favor of the County.

## IV. Conclusion

For the foregoing, Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

                          s/ Nancy G. Edmunds
                          Nancy G. Edmunds
                          United States District Judge

Dated: March 30, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2024, by electronic and/or ordinary mail.

                          s/ Amanda Chubb
                          Case Manager